UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ESTATE OF DEREK WILLIAMS JR.,
by SHARDAY ROSE, Special Administrator; and
TANIJAH WILLIAMS, DEREK WILLIAMS III, and
TALIYAH S. WILLIAMS, minors by their mother
and guardian SHARDAY ROSE,

                Plaintiffs,

v.                                                     Case No. 16-C-869

CITY OF MILWAUKEE, and Milwaukee Police
Officers JEFFREY CLINE, RICHARD TICCIONI,
PATRICK COE, JASON BLEICHWEHL,
ROBERT THIEL, TODD KAUL,
ZACHARY THOMS, GREGORY KUSPA,
CRAIG THIMM, CHAD BOYACK, and
DAVID LETTEER,

                Defendants.

---

### AFFIDAVIT OF ALLEN R. GROSZCZYK IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
_____

STATE OF WISCONSIN    )
                                  ) ss:
MILWAUKEE COUNTY    )

      ALLEN R. GROSZCZYK, being first duly sworn upon oath, does depose and state as follows:

      1.    I am currently employed as a Sergeant of Police with the Milwaukee Police Department, and have been employed by the MPD since September 27, 1993.

      2.    I have personal knowledge of the information averred to herein.

3. I have previously testified in the context of civil cases pending in federal court and in arbitrations, as an expert witness regarding use of force and other police-related topics.

4. Attached hereto as Exhibit AG-12 is a copy of my current curriculum vitae.

5. I am currently assigned as the Master Firearms Instructor for the City of Milwaukee Police Department, and I am a Tactical Skills Advisory Committee Member for the Wisconsin Law Enforcement Standards Board. I have served in several capacities at the MPD, and I am currently involved with administering both recruit and in-service training to MPD officers.

6. Also, I am in the process of being certified as a use of force expert with the Wisconsin Department of Justice in the areas of Defensive and Arrest Tactics and Firearms, and I am currently certified as a Master Instructor for Tactical Response and Scenarios. Being a Master Instructor means that I teach instructors how to teach law enforcement officers regarding these topics.

7. Attached as Exhibit AG-1 is a copy of Milwaukee Police Department Standard Operating Procedure (SOP) 090-Prisoners, which became effective on March 23, 2011, and which was in effect on July 6, 2011.

8. SOP 090 defines the responsibilities of department members, along with various procedures, as they relate to prisoners and the processing of persons in custody, and it is part of training received by all MPD personnel.

9. Section 090.40 relates to prisoners in need of medical attention.

10. That subsection provides that prisoners conveyed to a medical facility for non-emergency medical care may be conveyed by a police patrol unit.

11. Furthermore, that subsection provides that prisoners who have experienced an injury or an apparent emergency physical illness are to be conveyed to a medical facility by ambulance or a fire department paramedic unit.

12. The State of Wisconsin Department of Justice Law Enforcement Standards Board does not mandate any specific training with regard to providing medical assistance to prisoners.

13. However, the Milwaukee Police Department provides such training for its officers, and SOP 090-Prisoners is part of that training.

14. Attached as Exhibit AG-2 is a photocopy of the cover of a training video which was shown to all members of the Milwaukee Police Department during recruit and in-service training from roughly 2001 to 2009. A similar training video is still currently used by the MPD.

15. That training video is provided to the MPD by the American Heart Association, and provides personnel with information regarding when to administer first aid and CPR, and how to administer same properly.

16. In the context of that American Heart Association training, personnel are trained to be aware of a person's ABCs, which means airway, breathing, and circulation.

17. In the context of that training, over the course of my tenure with the MPD, I have heard American Heart Association trainers tell personnel that one indicator that a person is breathing is if they are talking.

18. The phrase "if you are talking, you are breathing," is something I have heard in the context of law enforcement training related to the ABCs and First Responder training.

3

19. However, officers have been and are currently taught that talking is not the only factor they should consider to determine if a subject is having difficulty breathing, and that being able to talk does not establish how well a person is able to breathe.

20. Attached as Exhibit AG-3 is a copy of a power point presentation presented to all MPD officers during in-service training from November 12, 2007 to January 8, 2008.

21. This power point presentation was an overview of the tenets of the emergency medical services system, and it was used to teach MPD personnel about acting as a First Responder.

22. A form of this training is still presented to Milwaukee police recruits and other personnel during their training.

23. As noted on page 3 of Exhibit AG-3, a First Responder is to check the scene, call for additional resources, and provide care for life-threatening conditions.

24. All Milwaukee Police Department officers have been and are trained that they should act as a First Responder when they observe any subject, including prisoners and citizens alike, experiencing a life-threatening condition or medical emergency.

25. Some examples of a life-threatening condition or medical emergency presented to officers during their First Responder training are stroke, seizure, diabetic emergency, poisoning, and allergic reaction. (See Exhibit AG-3, pages 7-8.)

26. Officers are trained that they should provide First Responder care to individuals experiencing life-threatening conditions or medical emergencies, but that they should do so only until medical providers who have a higher level of training arrive on scene.

27. Also, officers are trained that if a prisoner experiences a life-threatening condition or medical emergency, emergency medical care is to be summoned to provide

4

more advanced medical care for the prisoner and/or transport that prisoner to a medical facility for treatment as soon as practicable.

28. Officers are trained that they should request help from other officers and/or citizens before beginning CPR on an unresponsive prisoner.

29. Officers are trained that they cannot give medical care (except for minor first aid) or medications to prisoners, but that in the case of a medical emergency, they should only provide medical care to their level of training.

30. All MPD personnel are trained relative to First Responder, First Aid, CPR and AED training, during the course of their recruit training, and they receive bi-annual recertification training on these topics.

31. In the context of receiving First Responder training, officers are not trained regarding every possible medical condition that they might encounter, when dealing with the public. In short, they are not trained to be EMTs or doctors.

32. Ultimately, the diagnosis of medical conditions, and the provisions of either medication or medical care relative to those conditions, is not trained to Milwaukee police officers, and they are trained that they must defer to individuals with more advanced medical training relative to diagnosing, medicating, and/or otherwise treating any medical condition.

33. Prior to July 6, 2011, I had never heard of a subject in police custody dying from sickle cell crisis, and I do not believe that sickle cell crisis was a medical condition which was discussed in the context of either First Aid or First Responder training.

34. Since July 6, 2011, MPD policy has been changed, with regard to officer response and discretion in situations where a subject complains of having any difficulty with breathing. Prior to that date, officers could use their discretion in deciding whether such a

5

subject was in need of more advanced medical care. Now, if a subject makes such a statement, officers have no discretion, and must always call for Fire Department EMTs or a private ambulance service to respond, to determine if the subject is in need of medical treatment. Also, officers are now given information about sickle cell crisis and related symptoms.

35. All Milwaukee police officers have been trained regarding the First Responder checklist, which identifies the steps that they should work through when responding to someone who they believe is experiencing a medical emergency.

36. As noted on page 11 of Exhibit AG-3, the First Responder's first step should be to isolate his own body from potential harmful substances, by putting on gloves, a mask, and engage in the use of protective barriers, like a safety mask, which can be used over the mouth while administering CPR rescue breaths.

37. Officers are trained that they should protect themselves from bodily fluids that might be contaminated with communicable diseases, by using a safety mask when providing CPR rescue breaths.

38. Officers are trained that after they complete the "isolation" step, they should then evaluate the ABCs of the person, which involves an evaluation of his airway, breathing and circulation.

39. Officers are trained that relative to checking on the status of a subject's airway and breathing, they should listen in the area of the subject's nose and mouth, to determine if air is passing in and out of the person's lungs. They are also trained that they could feel for breath by placing their hand or fingers in front of the nose and mouth area. In the context of learning about the ABCs of being a First Responder, officers have been trained that if a

subject is talking, then therefore they are breathing, so they need not provide resuscitative breathing or chest compressions to the subject in that instance.

40. Officers are also trained that the anecdote that "if a person is talking, they are breathing" does not suggest that being able to talk indicates the degree to which a person is able to breathe.

41. Officers are trained that should they determine that a subject appears to have become unresponsive and/or stopped breathing, they should attempt to obtain help from fellow officers and/or citizens, before beginning CPR efforts.

42. Officers are further trained that should a person become unresponsive, and appear to have stopped breathing, and after they have called for help, the officers should then engage in CPR procedures, and begin rescue breathing and/or chest compressions, and continue to do so until emergency medical technicians, or any other person with more advanced medical training, arrives on scene and takes over their CPR activities.

43. Officers are trained that if the person does not require CPR, but is unconscious, or is otherwise experiencing a serious medical condition, they should attempt to keep the subject comfortable, look for a medical ID bracelet, beware of possible spinal cord injuries, and maintain not only officer safety, but the safety of the subject and other people as well.

44. Officers are trained that one technique they can use to check on the level of consciousness of a subject is a sternum rub, which involves rubbing the knuckles of one hand along the sternum bone of the subject. This technique can sometimes rouse a person, and/or confirm whether or not a person is conscious.

45. Exhibit AG-6 is a copy of the CPR and AED skills testing sheet, which is used in the context of American Heart Association CPR and AED training provided to Milwaukee Police Officers. A similar version of this sheet has been used in the context of First Responder instruction for many years. This testing document reinforces that officers are trained to first evaluate the situation and make sure that the scene is safe before proceeding. They then should ask others for help, and make sure that emergency help is called for, prior to beginning CPR. Officers are also trained that after they have made sure that the scene is safe, determined that the subject is not breathing, and asked for help and called for emergency medical response, they should scan the subject, and then begin rescue breathing and/or chest compressions.

46. Officers are trained relative to the ratio of chest compressions to rescue breaths to be given in the instance of both an adult subject and a child subject, and officers are trained that they should continue to provide rescue breathing and/or chest compressions until emergency medical providers arrive on scene to relieve them of their CPR activities.

47. Attached as Exhibit AG-7 is a copy of the face of another DVD presented to officers in the context of their CPR recertification training. This version was used in instruction from 2010 through 2015, and a similar version is still in use today. This exhibit also includes three pages which illustrate the outline for the lessons included within the recertification training. Those lessons include a refresher as to how to provide CPR and use an AED, how to check a person's airway and breathing, how to conduct chest compressions and rescue breaths, the differences between providing CPR to adults and children, how to respond to both adults and children who are choking and unresponsive, how to conduct rescue breaths using a bag mask, and how to use the AED machine.

48. Exhibit AG-8 is a copy of the face of another DVD used to train Milwaukee police officers regarding first aid, CPR and the AED, along with an outline of lessons contained on that DVD. It has been in use since 2011. The information presented in the context of this DVD is similar to that provided in the DVD identified in Exhibit AG-7.

49. Attached as Exhibit AG-9 is a copy of the face of the CPR AED student workbook, which is provided by the American Heart Association, and used in training Milwaukee police officers regarding CPR and AED. This version was used in 2011. Also copied in that exhibit is the table of contents, which illustrates that officers are trained regarding providing CPR and AED for adults and children, how to handle a situation where a person is choking, and how to conduct chest compressions and rescue breaths.

50. Attached as Exhibit AG-10 is a copy of excerpts from the student manual, relative to BLS (Basic Life Support) for Healthcare Providers, which is provided by the American Heart Association, and used in training MPD officers regarding acting as a First Responder. This version was used in 2011. These materials also illustrate that officers are trained regarding how to maintain basic life support, by providing CPR and using the AED regarding subjects who have become unresponsive and/or stopped breathing.

51. Attached as Exhibit AG-11 is a copy of excerpts from the First Responder Handbook – Law Enforcement Edition, which is currently used in training recruit officers to act as First Responders, and which has been used in MPD training since 2010. Recruit officers are trained regarding the same CPR, first aid and AED methods noted above. They also are trained about what it means to be a First Responder, the importance of safety in being a First Responder, emotional issues they might experience when acting as a First Responder, legal and ethical considerations in acting as a First Responder, as well as a basic

9

review of the different systems within the human body, how to assess subjects, how to assess their airway and breathing, and how to address soft tissue injury, bleeding, injuries to bones and muscles, and how to deliver a baby.

52. Exhibit AG-4 is a copy of SOP-460 (effective December 18, 2009), which relates to use of force. This standard operating procedure is trained to all officers during recruit training, it is revisited annually in the context of in-service training, and it was in effect on July 6, 2011.

53. In the context of their use of force training, officers are trained that it is the policy of the Milwaukee Police Department that all uses of force must comply with the State of Wisconsin Defense and Arrest Tactics, Disturbance Resolution Model, Intervention Options as presented in the Defensive and Arrest Tactics Training manual. (See pg. 1, Exhibit AG-4).

54. Officers are trained relative to their approach considerations, including their decision making, their tactical deployment, and their tactical evaluation skills. Officers are also trained regarding intervention options, including the use of their presence, dialog, control alternatives, protective alternatives, and deadly force, in response to different situations. Officers are also trained to stabilize the situation, monitor and debrief subjects, conduct appropriate searches, escort prisoners, if necessary, transport prisoners, if necessary, and turn over or release a subject who has been in their custody.

55. Officers are trained that when making an arrest they are entitled to use whatever force is reasonably necessary. They are also trained that whether the force used is reasonable depends upon the totality of facts and circumstances in each case.

56. Attached as Exhibit AG-5 is a copy of excerpts from the defensive and arrest tactics training guide for law enforcement officers, which is published by the Wisconsin Department of Justice Law Enforcement Standards Board, and used to train all law enforcement officers in the State of Wisconsin. This guide was in effect on July 6, 2011. Milwaukee police officers are provided with a copy of this training guide in the context their MPD training, and they are expected to use their good judgment and engage in best practices in applying the information presented in this guide.

57. While this guide is a useful tool, and contains much information, there is no way that any training guide could possibly prepare a law enforcement officer for each and every use of force and/or arrest situation that they will encounter in the context of their law enforcement work.

58. In the context of their use of force training, officers are trained that they may use certain techniques, when arresting people and taking them into custody, and otherwise maintaining control of them.

59. One technique that is trained is the use of the three point ground stabilization maneuver. With regard to this maneuver, an officer places his weight on one knee, which is positioned on the ground close to the torso of a subject who is being handcuffed or searched. The other knee is placed across the subject's shoulder area. This allows the officer to free up his hands, to use them in the handcuffing and/or searching process, while still maintaining control of the subject. This is a commonly used technique, and it generally does not cause any injury whatsoever to the arrestee.

60. Officers are trained that they are required to report uses of force to supervisors, so that their supervisors can prepare and file a use of force report to document the incident.

61. Officers are trained that if they observe any officers engaging in what they perceive to be a use of excessive force, they are required to report same to a supervisor.

62. Officers are trained that if they either engage in an excessive use of force, or observe what they perceive to be an excessive use of force and fail to report either, they could be subject to investigation and discipline, including termination.

63. Officers are trained that they are to follow the MPD Code of Conduct, and that the Code of Conduct requires that they be ethical and honest in their work, including reporting their misconduct, and the misconduct of other officers.

64. MPD officers are also trained that according to MPD policy and the MPD Code of Conduct, officer misconduct must be reported to supervisory personnel. They are trained that if they engage in misconduct, or if they do not report misconduct, they could be subject to discipline, including termination.

65. All the training materials identified above, along with the practices and procedures discussed therein, are presented to all Milwaukee police officers during the course of both their recruit training, and their annual in-service training.

66. The training regarding First Aid, CPR, AED, and acting as a First Responder is consistent with that mandated by the Wisconsin Law Enforcement Standards Board, and provided to all law enforcement officers in the State of Wisconsin.

/s/ Allen R. Groszczyk
ALLEN R. GROSZCZYK, Sergeant
Milwaukee Police Department

Subscribed and sworn to before me
this 24th day of April, 2017.


Susan E. Lappen
State of Wisconsin, Notary Public
My Commission is permanent.


1032-2016-1482/238761